POWELL *v.* STATE.

Opinion delivered April 4, 1927.

1. BURGLARY—SUFFICIENCY OF EVIDENCE.—In a prosecution for bur-
   glary under Gen. Acts, 1921, p. 69, evidence *held* sufficient to
   authorize the jury to find defendant guilty.

2. CRIMINAL LAW—EXPRESSION OF OPINION IN ARGUMENT.—In a pros-
   ecution for burglary, a remark of the prosecuting attorney in
   argument that this was no ordinary case, an opinion warranted
   by the evidence, was not ground for reversal.

3. CRIMINAL LAW—STATEMENT BY PROSECUTING ATTORNEY.—In a
   prosecution for burglary, a statement by the prosecuting attorney
   that a newspaper dated prior to the burglary and addressed to
   defendant's father-in-law was found in the abandoned car used
   by the burglars was not objectionable where the newspaper was
   introduced in evidence though not read to the jury, and showed
   that it was addressed to defendant's father-in-law.

4. CRIMINAL LAW—STATEMENT BY PROSECUTING ATTORNEY.—In a
   prosecution for burglary, remarks of the prosecuting attorney,
   not intentionally misleading, that certain witnesses had made
   certain statements, when they had not done so, was not reversible
   error, where the court instructed the jury that they were the
   judges of the evidence and should consider only the evidence and
   not the argument of the attorney on evidence not introduced.

5. CRIMINAL LAW—STATEMENT BY PROSECUTING ATTORNEY.—In a
   prosecution for burglary, a statement by the prosecuting attor-
   ney that he did not know what sort of coat defendant wore,
   but that the jury could notice that he was in his shirt sleeves at
   that time, was not erroneous as a comment on defendant's failure
   to testify.

6. CRIMINAL LAW—ARGUMENT OF PROSECUTING ATTORNEY.—The pros-
   ecuting attorney should not be prevented from commenting on
   the testimony given by other witnesses because defendant
   refrained from testifying as a witness.

Appeal from Miller Circuit Court; *James H. McCol-
lum,* Judge; affirmed.

*H. W. Applegate,* Attorney General, and *Darden
Moose,* Assistant, for appellee.

*Will Steel,* for appellant.

HART, C. J. Nig Powell prosecutes this appeal to
reverse a judgment of conviction against him for the
crime of burglary. Under our statute, burglary is the
unlawful entering a house, tenement, railway car or other

building, boat, vessel or watercraft with the intent to commit a felony.    General Acts of 1921, page 69.

The first assignment of error of the defendant is that the evidence is not legally sufficient to support the verdict.

G. E. Atkins, cashier of the Garland City Bank, at Garland, in Miller County, Arkansas, was a witness for the State.    According to his testimony, on August 9, 1926, about ten o'clock in the morning, two men entered the bank, and, pointing a gun at him, made him put up his hands.    They then went over to the cash drawer and took $360, and left the bank by the rear door.    The money belonged to the bank.    One of the men wore a blue suit and the other wore a khaki or gray suit.    The defendant is practically the same size and his hair is the same color as one of the men who held him up and took the money.    The defendant looks like one of the men.

According to the testimony of Dr. Cook, he left the bank a short time before it was held up, and went home. He saw a car with two men pass his house at a rapid rate of speed, and, about that time, he was told that the bank had been robbed.    The car was a Baby Overland touring car, and was being driven as fast as it could go.    The defendant looks mighty like the man who was driving the car.    The witness knew where Bud Ward lives in the country, and had seen the defendant there a number of times.    The defendant is a son-in-law of Bud Ward.

Ralph Stokes was also a witness for the State. According to his testimony, he had known the defendant about two years, and saw him on the morning of the 9th of August, the day the bank was robbed.    The defendant was in a Baby Overland car traveling towards Garland. The car was being driven at a moderate rate of speed.

Another witness for the State testified that he saw two men walking along in Garland on the day the bank was robbed.    One of them had on a blue suit and was carrying a pistol.    The witness did not know the defendant at that time, but the man with the blue suit on, carrying the pistol, looked like the defendant.

Another witness testified that she was working in the postoffice, and saw an Overland car parked there. The bank is just around the corner from the postoffice.

Another witness testified that he could recognize the defendant when he saw him, and that he saw him standing back of the postoffice, by an Overland car, on the day the bank was robbed. The defendant had on a blue serge suit.

Another witness, who had known the defendant about two years, testified that, a short time after the robbery occurred, and on the same morning, he saw the defendant and another man coming from Garland and going towards McKinney. The defendant was driving the car, and it was going about thirty miles an hour. In a few minutes the witness met an officer, who told him about the bank being robbed, and asked him if he had seen a car. The witness replied that he had, and the officer went on in the direction that the car had been going. In a short time the officer found an abandoned Baby Overland car near the residence of Bud Ward. It contained a paper of the issue of August 7, 1926, addressed to Bud Ward. It also had two or three khaki shirts in it. On the next day the officer saw one of Bud Ward's boys wearing a shirt just like the ones found in the Baby Overland car.

This evidence was sufficient to warrant the jury in convicting the defendant. The undisputed evidence shows that the bank was robbed on the morning in question by two men. One of them wore a blue serge suit and the other a khaki suit. The defendant was recognized by a person who had known him for two years, going towards the town of Garland in a Baby Overland car, with a companion. The car was being driven at a moderate rate of speed. This same kind of a car was seen parked near the postoffice in the town of Garland on the same morning. The defendant was seen standing by the car. He had on a blue suit. Another witness saw him walking along the streets of Garland that morning with a pistol in his hands. Soon after the robbery the defendant was seen

driving hurriedly away from Garland with a companion in a Baby Overland car. The car was abandoned near the home of the father-in-law of the defendant. One of the witnesses testified that he had seen the defendant at his father-in-law's house several times. This witness thought the defendant was one of the men who drove rapidly by his house in a Baby Overland car, a few minutes after the robbery. The jury might legitimately infer from this evidence that the defendant was one of the persons who entered the bank and took the money from it on the morning in question.

It is next insisted that the judgment should be reversed because the prosecuting attorney told the jury that this was no ordinary case. It is apparent, from the brief history of the case given above, that the prosecuting attorney was correct in his remarks to the jury, and it is no reversible error for him to express to the jury his opinion derived from the evidence in the case. *Blackshare* v. *State,* 94 Ark. 548, 128 S. W. 549, and *Sanders* v. *State,* 164 Ark. 491, 262 S. W. 327.

It is next insisted that the judgment should be reversed because of the statement of the prosecuting attorney that the newspaper dated August 7, 1926, was found in the abandoned Baby Overland car. The basis of this objection is that the newspaper was not introduced in evidence; but the record shows that the newspaper was introduced in evidence before the jury, although it was not read to them. The newspaper showed that it was addressed to Bud Ward, who, according to the testimony of one witness, was the father-in-law of the defendant; and the abandoned car was found near his house. Therefore we hold that this objection was not well taken.

It is also insisted that the judgment should be reversed because the prosecuting attorney argued to the jury that certain witnesses had testified to certain facts, when such was not the case. On this point the court told the jury that it was the judge of what evidence had been introduced, and that it should not consider any evidence

except that introduced before it, and that they should not consider the argument of the prosecuting attorney based on evidence that was not introduced. It was not shown that the prosecuting attorney willfully referred to evidence that was not in the record, and we think that the remarks of the court removed any prejudice that might have resulted from the misstatement of the testimony by the prosecuting attorney. *Adams* v. *State,* 165 Ark. 308, 264 S. W. 858.

It is also insisted that the judgment should be reversed because the prosecuting attorney referred to the fact that the brother-in-law of the defendant was in the court room, when this fact had not been proved in evidence. One witness, in testifying, referred to the fact that this boy was in the court room. The court again told the jury not to consider any argument of the prosecuting attorney based upon matters that had not been introduced in evidence. Hence we conclude that there was no prejudicial error resulting to the defendant.

Finally, it is insisted that the judgment should be reversed because the prosecuting attorney commented upon the fact that the defendant had not testified as a witness in the case. Hence, under the authority of *Davidson* v. *State,* 108 Ark. 191, counsel for the defendant insist upon a reversal of the judgment. The remarks complained of in the present case which are construed by counsel for the defendant as a comment on the failure of the defendant to testify is that the prosecuting attorney stated to the jury that he did not know what sort of a coat the defendant had on on the day of the robbery, but that the jury could notice that he was in his shirtsleeves at that time. We do not think that this could, by any means, be construed as a comment on the failure of the defendant to testify. The jury could see whether the defendant was in his shirtsleeves on the day of the trial or not. That fact was apparent to any one. The witnesses who knew the defendant and saw him on the day of the robbery testified that he had on a blue coat. It certainly should not be said that the prosecuting attorney

should refrain from commenting on the testimony given by other witnesses because the defendant refrained from testifying as a witness.

We have carefully examined the record, and find no reversible error in it. It follows that the judgment will be affirmed.