MELTON *v.* STATE.

4474                                          209 S. W. 2d 99

Opinion delivered February 23, 1948.

Rehearing denied March 29, 1948.

*Moncrief & Moncrief* and *Reinberger & Eilbott,* for appellant.

*Guy E. Williams,* Attorney General and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

McHANEY, Justice. Appellant was charged by information with the crime of pandering, under the provisions of § 3391 of Pope's Digest which makes it a felony for any person to "knowingly accept, receive, levy or appropriate any money or other valuable thing, without consideration, from the proceeds of any woman engaged in prostitution," and fixes the punishment on conviction at not less than two nor more than 10 years' imprisonment. The statute also makes the receipt of any such money presumptive evidence of lack of consideration.

The information charged, in the language of the statute, that the appellant did "knowingly accept, receive, levy and appropriate money, without consideration from the proceeds of the earnings through prostitution of Ruby Mae Melton" who posed as his wife. They were arrested at the Hotel Pines in Pine Bluff and the State presented evidence of similar offenses at several hotels in Little Rock, where Ruby Mae was plying her trade in company with appellant. When the case came on for trial the court ordered that the information be amended in certain particulars, over the exceptions of appellant.

Trial resulted in a verdict of guilty and 10 years' imprisonment, on which judgment was entered accordingly. This appeal followed.

1. During the closing argument of the State's attorney, he read to the jury Webster's definition of a panderer,—"a pimp, a procurer, a male bawd, a profligate wretch who caters for the lust of others"—over the objections and exception of appellant. This is the first assignment argued for a reversal, but we think it is without merit and resulted in no prejudice to him. Wide latitude is allowed in argument to the jury and the Webster definition is no broader than the meaning of the statute which the court read to the jury. Certainly a man who lives off of the proceeds of the earnings through prostitution of a woman he calls his wife is "a profligate wretch who caters for the lust of others."

2. It is next said that instruction No. 2 is erroneous because it does not tell the jury that appellant could be convicted only for receiving the proceeds of or from a woman's prostitution, and not her earnings, if any, from legitimate sources. We think the instruction not open to this objection, but, if it were, it was appellant's duty to call the defect to the attention of the court by a specific objection. Only a general objection was made.

3. Instruction No. 5 told the jury that evidence of other similar offenses to the one charged had been admitted, not for the purpose of conviction for such similar offenses, but "solely for the purpose of showing design, particular intention," etc., "and you should consider such

evidence for this purpose and for this purpose alone.''
It is now argued, for the first time and without a specific
objection, that the ''court should not single out and di-
rect the jury to consider any particular evidence as proof
of any particular issue.'' This instruction was in appel-
lant's favor. It was cautionary, in its nature. Other
competent evidence had been introduced of offenses
exactly similar to the offenses charged, and it was for
the protection of appellant that the court limited the
jury's consideration thereof to the matters stated. Cases
are cited to the effect that the court has no right to point
out what inferences should be drawn from the evidence,
(*Blankenship* v. *State*, 55 Ark. 244, 18 S. W. 54, and
others), but the court did not point out any inference to
be drawn by the jury, but only that they should consider
such evidence only for the purposes stated.

4. Another assignment argued for a reversal is that
the court erred in permitting the witness, Frank William-
son, to testify, over appellant's objections and exceptions,
to statements made to him by Ruby Mae Melton in the
absence of appellant. Ruby had testified both on direct
and cross-examination that she had not been engaged in
prostitution, did not give appellant any money, did not
have any dates with men and that the Negro bell boys
in hotels did not make any dates for her. On cross-
examination, after testifying that she had a conversation
with witness Williamson in the jail after her arrest, in
the absence of appellant, she was asked this question:
''Is it for a fact that you told him (Williamson) that
during all of the time you were in Little Rock at the
Gleason, Marion, Ben McGehee and Capitol Hotels that
you were engaged in prostitution?'' She answered: ''No,
sir, I didn't tell Mr. Williamson any such of a thing.''
Another question was: ''Did you tell Mr. Williamson
that practically all of the money you and Mr. Melton had
from the time you left Atlanta in March that you had
made by prostitution?'' She answered, ''No I didn't.''
She denied she told Williamson that, on the night of May
1, at the Pines Hotel in Pine Bluff, she had sexual inter-
course for money. Mr. Williamson testified on rebuttal
that she did make the statements to him which she had

denied making. Counsel for appellant objected to the testimony of the witness on the ground that appellant was not present when the statements of Ruby Mae were made to Mr. Williamson, which was overruled. Certainly this testimony was admissible to impeach the testimony of Ruby Mae Melton, or as going to her credibility as a witness, and the court was not requested to so limit it. So, the objection must fail, even though the ground of objection stated was well taken, a question we do not now decide.

5. It is also argued that the court erred in directing that information be amended by inserting after the word "money" the words "good and lawful money of the United States of America," and by inserting after the words "Ruby Mae Melton" the words "a female prostitute then and there engaged in prostitution." No error was committed by these amendments as they are permitted by § 3853 of Pope's Digest. *Underwood* v. *State,* 205 Ark. 864, 171 S. W. 2d 304.

Other assignments are argued for a reversal of the judgment which we have carefully considered and find them without substantial merit.

No error appearing, the judgment is affirmed.